UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of  BARCELONA EQUIPMENT, INC. | CIVIL ACTION |
| VERSUS | NO. 11-2183<br>C/W 11-2295<br>C/W 11-2983<br>C/W 12-0496<br>C/W 12-0787<br>C/W12-0838 |
| DAVID BOLAND, INC., INC., ET AL. | SECTION "K"(4) |

Re: Target Construction, Inc. v. Kendra &
    Associates, et al., C. A. No. 12-838

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. 59) filed by defendant B&B Surplus, Inc. ("B&B"), improperly sued as  B&B Surplus Metals of Santa Ana, Inc.  B&B seeks dismissal of this suit based on the lack of this Court's personal jurisdiction over it.   B&B is a seller of steel and is incorporated under the laws of the State of California with its principal place of business in Bakersfield, California.  A Nevada corporation, Target Construction, Inc. ("Target"), based in Nevada, placed two orders for galvanized steel which was to be incorporated into certain work that Target was executing in Louisiana.  Target has sought to make B&B a defendant in these proceedings based on allegations that the steel provided for the Louisiana job was defective and that it knowingly participated in a fraudulent scheme aimed at Target. The Court has reviewed the pleadings, memoranda, exhibits, and the relevant law and finds that B&B has insufficient contacts with the State of Louisiana for this Court to exercise personal jurisdiction over it.  As such the motion must be granted.

## II. BACKGROUND

As discussed previously in the Court's ruling on a Motion to Dismiss (Doc. 111) filed by Technical Works, Inc. ("TWI"), Ingrid Arciniaga (Ms. Arciniaga") and Robert Arciniaga (Mr. Arciniaga"), the United States Army Corps of Engineers ("the Corps") contracted with David Boland, Inc. ("Boland") as prime contractor to perform the complete construction of a Corps project (USACE Project Number W912P8-10-C-0079) near the Lakefront Airport in New Orleans, Louisiana ("the Lakefront Airport Project") on May 26, 2010[1]. (Complaint, ¶21). The Corps also contracted with Lakeshore Engineering Service, Inc. ("Lakeshore") as prime contractor, to perform the complete construction of another Corps project (USACE Project Number W912P8-10-C-0050) near the Cross Bayou drainage structure in Destrehan, Louisiana ("the Cross Bayou Project"). (Complaint ¶ 23). (See also Doc. 68-1, Opposition Memorandum of Target, Affidavit of Jeff Fegert, President of Target, ¶¶ 5, 7) (hereinafter "Fegert Affidavit"). Both Lakeshore and Boland entered into subcontract agreements with Target, as subcontractor, "to provide certain work." (Complaint, ¶¶22, 24; Fegert Affidavit, ¶¶6, 8).

Target sought to sub-subcontract out the fabrication and installation of certain structural steel installations. (Fegert Affidavit, ¶ 9). That sub-subcontracting responsibility fell to Target's then Gulf Coast Regional Manager, Edward Riggs. (Fegert Affidavit, ¶ 10). Eventually, those sub-subcontracts were awarded to the Kendra[2] defendants herein, and the work executed thereunder is the focus of the instant complaint. Target alleges that Ms. Arciniaga had a

---

[1] *United States of America for the Use and Benefit of Target Const., Inc. v. David Boland, Inc., et al.,* C.A. No. 11-2038 SSV-JCW, Complaint, ¶ 7.

[2] These companies are Kendra Construction Services, Inc. ("KCS"), Kendra & Associates, Inc. ("K&A") and JRS Industries, Inc. ("JRS") (collectively "Kendra"). (Complaint ¶13). Ken and Brenda Johnson were the prinicpals fo the Kendra entities.

monetary interest in Kendra's accounts and that she used information gained by through her romantic relationship with Mr. Riggs to artificially inflate the Kendra bids. The Court has found that by virtue of the actions taken by TWI, Ms. Arciniaga and Mr. Arciniaga in connection with these contracts, it was clear that their alleged action of inflating of costs of the bids would affect two contracts in Louisiana and would harm the people of Louisiana. The Court further found these allegations in the Complaint not to be conclusory in nature as they were alleged with specificity and supported by e-mail correspondence.

The gravamen of the allegations against B&B, however, is neither so clear nor specific. Target opines that:

> At the suggestion of the "Johnsons/Kendra/the Arciniagas/TWI," Target entered into an agreement with B&B, a raw materials supplier, in order to procure the raw products necessary for Kendra/TWI to perform its scope of work on the Lakefront Airport Project and Cross Bayou Project.
>
> Pursuant to its agreement with Target, B&B provided galvanized steel allegedly conforming to Target's specifications, which steel was selected by B&B as raw steel and then galvanized by B&B before being provided to Kendra /TWI for eventual use on the Lakefront Airport Project. Per the terms of Target's agreement with B&B, B&B was to provide raw materials only for such purchase orders that were approved by a duly authorized representative of Target.
>
> B&B was aware when it entered into its agreement with Target that the construction projects for which its steel was being provided were located in Louisiana. Edward Riggs sent invoices to B&B with a Louisiana address on it showing that B&B steel materials would be used in Louisiana.
>
> Having been incorporated into Target's scope of work on the Lakefront Airport Project by Kendra/TWI, it was discovered that the subject galvanized steel was defective and/or otherwise nonconforming when the galvanizing failed.
>
> As a result of the failure of the non-conforming galvanized steel, a substantial back charge was assessed against Target by the general contractor.

(Doc. 68, Opposition Memorandum at 8-9 citing Fegert Affidavit, ¶¶ 33-41 and accompanying exhibits). In addition, Target contends that B&B entered into a fraudulent scheme with Johnsons/Kendra/the Arciniagas/TWI sufficient to support personal jurisdiction as well. For this proposition, it cites paragraphs 43through 49 of its Complaint which culminates with the contention that:

> B&B knowingly and/or intentionally filled the unauthorized purchase orders submitted by the Johnsons/Kendra/the Arciniagas/TWI, the costs of which B&B knowingly and/or intentionally billed to Target, despite knowing that such orders were not approved by a duly authorized Target representative and that the Johnsons/Kendra/the Arciniagas/TWI intended to convert and were actually converting such raw materials to their own use.

(Complaint, Doc. 1 ¶49). Based on these allegations, Target maintains that personal jurisdiction is warranted.

B&B refutes such a contention. As noted, B&B is a California company with its primary market is San Joaquin Valley California. It does not do business in the State of Louisiana and directs no advertising in Louisiana.(Doc. 59-2, Affidavit of Michael Georgino, Vice-President of B&B, ¶2, 3 and11). B&B explains that its involvement in this matter is limited to the following:

1) On November 11, 2010 B&B Surplus, Inc. received a credit application in California from Target Construction, Inc., a company based in Las Vegas, Nevada and based on which B&B Surplus, Inc. opened an account for Target Construction, Inc.

2) On November 16, 2010, Target Construction, Inc. submitted a Purchase Order bearing number 689, signed by Edward G. Riggs, to B&B Surplus, Inc. outside sales associate Jason Rooney.

3) The Purchase Order reflected Target Constructions Inc.'s desire to purchase raw material for a construction project referred to as "Cross Bayou Sluice Gates and miscellaneous metals," for a total price of $116,525.02.

    4)        On February 3, 2011 Target Construction, Inc. submitted a second Purchase Order bearing number 105.02, again signed by Edward G. Riggs, to B&B Surplus, Inc. outside sales associate Jason Rooney.

    5)        B&B Surplus, Inc. did supply the products referenced in the purchase orders, and that ownership of the products transferred to Target Construction Inc. in California upon delivery.

    6)        B&B Surplus, Inc. did not ship any product to Louisiana.

    7)        The products supplied by B&B Surplus, Inc. to Target Construction, Inc. referenced above are, to the best of its knowledge, the only connection B&B Surplus, Inc. has ever had to Louisiana.

(Doc. 59-2, Affidavit of Georgino ¶¶ 4-10).

Purchase Order 689 is addressed from Target Construction Inc., 525 Kempner Suite, #2, Galveston, TX 77550, and is authorized by Edward Riggs, who was a Target employee. The only indication of Louisiana involvement is that Target was to be billed to Edward Riggs, Target Construction, Inc. in New Orleans, LA. ((Doc. 68-8, Exh "H"). Likewise, in an e-mail from Edward Riggs to Jason Rooney with respect to Purchase Order 105.02, Edward Riggs appears to be located Galveston. (Doc. 68-7 Exh. "G"). It is noted in the e-mail that the materials are for a "job in New Orleans." These are the only two documents presented in opposition to the Motion to Dismiss that have any relation to B&B.

## II. LEGAL STANDARD

"'[T]he party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court.'" *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320 (5th Cir. 1996) citing *Bullion v. Gillespie*, 895 F.2d 213 at 216-17. When making such a determination without conducting an

evidentiary hearing, the allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs. *DNH, L.L.C. v. In-N-Out Burgers*, 381 F. Supp. 2d 559 (E.D.La. 2005) citing *Thompson v. Chrysler Motors Corp.*, 775 F.2d 1162, 1165 (5th Cir. 1985). In making that determination, affidavits, interrogatories, depositions, oral testimony or any combination of recognized [discovery] methods may be considered by the court. *Id.* However, a court is not required to credit conclusory allegations, eve in uncontroverted. *Panda Brandywine Corp. v. Potomac Electric Power* Co., 253 F.3d 865, 869 (5th Cir. 2001).

### Personal Jurisdiction

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statue confers personal jurisdiction over that defendant and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Level 10 Promotions , LLC v. Wilkes-Barre Motors, Inc.*, 2008 WL 2781534, *2 (E.D. La. July 14, 2008) (Vance, J.) citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statue extends jurisdiction to the maximum limits permitted by due process under the Constitution of the United States,  La. Rev. Stat. § 13:3201(B),  the Court must determine whether the exercise of its jurisdiction in this case satisfies federal due process requirements.

As stated by the Fifth Circuit Court of Appeals:

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of

>  jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw*, 167 F.3d at 211.

Minimum contacts with the forum state can arise incident to either "specific jurisdiction" or "general jurisdiction." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). The *Marathon* court explained:

> The "minimum contact" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Exercise of specific jurisdiction is only appropriate when the nonresident's contacts with the forum state arise from or are directly related to the cause of action. General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial.

*Id.* In addition, with respect to general personal jurisdiction, the minimum contacts review is more demanding and broader and requires a plaintiff to demonstrate substantial activities in the forum state. Clearly, in this instance, there is certainly insufficient nexus to Louisiana to give rise to general jurisdiction.

Specific personal jurisdiction is a claim-specific inquiry. *McFadin* 587 F.3d at 759. The *McFadin* court stated:

> "There is a three-step analysis for specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."

*Id.* citing *Seiferth v. Helicopteros Atunerso, Inc.* 472 F.3d 266 (5th Cir. 2006). The *McFadin* court explained:

7

>The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court." The defendant "must not be haled into a jurisdiction solely as a result of 'random' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'"

*Id.* citing *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 871-872 (5th Cir. 1999). For example, "a contract with an out-of-state- party alone, although relevant, does not automatically establish sufficient minimum contacts." *Electrosource*, 176 F3d at 872 citing *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985).

In this instance, there is no indication that B&B purposely directed its activities toward Louisiana. Rather, Target, through its employee Edward Riggs, contacted B&B, in order to purchase certain amounts of galvanized steel. B&B sold its products to Target in California, where ownership transferred, and Target, not B&B transported the steel to Louisiana. B&B simply supplied a product which was to be incorporated into a project for which Target was a sub-subcontractor. It was Target's unilaterally approaching B&B which caused this product to be introduced in Louisiana.

The fact that ownership of the galvanized steel transferred to Target in California supports the Court's finding that there are insufficient minimum contacts with Louisiana. A close reading of *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006) underscores this finding. In *Luv N'care*, an allegedly infringing manufacturer had sold 82,224 of its patented bottles to Wal-Mart with 3,696 copies ending up in a Wal-mart distribution center in Opelousas, Louisiana. Specific personal jurisdiction was found with the appellate court noting that the F.O.B. terms of the contract where ownership transferred to the wholesale buyer on receipt prior to its being shipped to Opelousas did not prevent a court from exercising personal jurisdiction

over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggested that jurisdiction is proper. *Id.* at 471-72.

However, the facts of *Luv N'care* are inapposite to those presented here, dicta in *Luv N'care* discussing *Charia v, Cigarette Racing Team, Inc.*, 583 F.2d 184, 188-89 (5th Cir. 1978) supports this analysis.

In *Charia*, Louisiana plaintiff had purchased a boat in Florida responding to a national add; the boat was allegedly defective and Charia sued the Florida boat builder in Louisiana. The shipment was "FOB Florida" which meant that title to the goods and the risk of loss passed to Charia in Florida. Charia argued that the significance of the FOB shipment was that under a "stream of commerce" rational, the boat builder was indirectly shipping its product into Louisiana and thus could have foreseen the sale of the boat would have effects in Louisiana. The Fifth Circuit rejected his contention and held instead that the F.O.B. shipment, without more, does not constitute purposeful availment of the laws of the forum state and thus held, *inter alia*, that minimum contacts were absent. *Luv N'care, Ltd.,* 438 F.3d at 471-472, n.10.  The *Luv N'care* court noted that the dynamic would change if the defendant had supplied its product to the forum state in large quantities over a lengthy period of time' might be treated differently." *Luv N'care, Ltd.,* 438 F.3d at 471-472, n.11.

Clearly, here, two isolated sales of this nature cannot provide the necessary "minimum contacts" for this Court to exercise jurisdiction over B&B. This situation is indeed like *Charia* with even less support. This case does not present an instance where B&B undertook any step which indicates that it availed itself of the privileges of conducting activities in the forum state or that it in any way availed itself of the privileges of conducting activities in Louisiana.

Likewise, Target's contention that there is personal jurisdiction as a result of B&B's alleged fraud is without merit. The Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), clearly held that if intentional conduct is intended to cause injury in a specific state, that is sufficient to give specific jurisdiction to the courts of that state. *Kwik-Kopy Corp. v. Byers*, 37 Fed. Appx. 90, 2002 WL 1021889 (5th Cir. May 9, 2002). However, as previously noted, a district court is not required to credit conclusory allegations. *Panda Brandywine Corp.,* 253 F.3d at 869. Simply put, it is solely conclusory and nonsensical allegations that plaintiff has presented here.

The allegation that somehow B&B should have known that the orders "were not approved by a duly authorized Target representative and that the Johnsons/Kendra/the Arciniagas/TWI intended to convert and were actually converting such raw materials to their own use" is patently insufficient to support jurisdiction. There is no affidavit by any person with personal knowledge that would indicate that B&B had or could have had such knowledge. There is no corroboration of any sort, to refute the fact that Edward Riggs was Target's own employee and that he placed the orders. As such, it would appear that the orders were "duly authorized" by definition. Furthermore, there is no allegation in the Complaint that B&B had any dealings whatsoever with the "Johnsons/Kendra/the Arciniagas/TWI" entity(ies) or any factual allegation as to how it could have had any knowledge of their alleged misappropriations.

As to the second prong, that is to determine the fundamental fairness issue, the Court examines:

> the burden on the defendant, the interest of the forum state, and the plaintiff's interest in obtaining relief. [the court] must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of

>controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus. v. Superior Court of California,* 480 U.S. 102, 115 (1987).   Clearly, not one of these factors is met.  B&B has no dealings with the State of Louisiana and defending a suit arising out of a unilateral purchase made by plaintiff would be unduly burdensome.  The interest of Louisiana in this matter is minimal at best.   If indeed the materials were faulty, Target may proceed against B&B in California.   Accordingly,

**IT IS ORDERED** that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)(Doc. 59) filed by defendant B&B Surplus, Inc. is **GRANTED**

New Orleans, Louisiana, the 2nd day of November, 2012.

\
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**