UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BARCELONA EQUIPMENT, INC.**                          CIVIL ACTION

**VERSUS**                                             NO. 11-2183
                                                       C/W 11-2295
                                                       C/W 11-2983
                                                       C/W 12-0496
                                                       C/W 12-0787
                                                       C/W 12-0838

**TARGET CONSTRUCTION, INC. ET AL.**                   SECTION "K"(5)

                                                       PERTAINS TO 11-2183

## ORDER AND REASONS

Before the Court is Barcelona Equipment, Inc.'s Motion for Partial Summary Judgment Against Target Construction, Inc. (Doc. 80) wherein it seeks an order "granting the relief sought against Target [Construction, Inc.] in Count Three of Barcelona's Complaint and dismissing Target's Counter-Claim. Having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court finds that there are material questions of fact precluding summary judgment.

**Background**

In this Miller Act case brought pursuant to 40 U.S.C. §§3131, 3133, plaintiff Barcelona Equipment, Inc. ("Barcelona") is a Florida corporation which is engaged in the business of supplying, leasing, operating and maintaining cranes for use in construction activities. It entered into an Equipment Lease Agreement ("Lease") on November 11, 2010 with Target Construction, Inc. ("Target") which was a Sub-Contractor on two United States Army Corps of Engineers projects: Corps project (USACE Project Number W912P8-10-C-0079) near the Lakefront Airport in New Orleans, Louisiana ("the Lakefront Airport Project") and Corps project (USACE

Project Number W912P8-10-C-0050) near the Cross Bayou drainage structure in Destrehan, Louisiana ("the Cross Bayou Project"). The Lease at issue was for the rental of a 1994 Manitowoc M85 crane ("the Crane") that was to be used by Target for the performance of work under Target's subcontracts with David Boland, Inc. ("Boland") which was the prime contractor for the two subject Corps projects.

Barcelona maintains that the crane was leased to Target "as-is" and that Barcelona made no representation or warranty with respect to the suitability or durability of the crane for the purposes and uses intended by Target. In addition, Barcelona contends that the Lease required Target to maintain the crane and indemnify Barcelona for all damages to the crane during the rental period and that Target would pay all costs and expenses, including attorney's fees incurred by Barcelona in the collection of money owed to Barcelona under the Lease. Thus, based on the relevant Lease provisions, Barcelona contends that Target owes $71,893.33 for the bare rental, freight-in, freight-out, erector costs and expenses. In addition for the alleged failure of Target to maintain the equipment properly, Barcelona contends that it is owed $20,349.29 for the repair of worn or broken parts of the crane while in Target's possession. Finally it seeks the cost of this action, attorney's fees and expenses. These allegations comprise Count Three of Barcelona's Complaint and are the subject of Target's Counter-Claim against Barcelona. It is with respect to these claims that Barcelona has sought Partial Summary Judgment.

Initially, as its basis for this motion, without citing a single case or statute nor gracing the Court with a statement as to what law to apply, Target cited five provisions of the Lease. Section 9 pertains to the maintenance and operation of the Crane; section 11 concerns

indemnification against any loss of the Crane or damage thereto.  Section 17 styled "ACCEPTANCE OF EQUIPMENT" provides:

> The acceptance by the Lessee of the Equipment described herein constitutes his acknowledgment that he has inspected the said Equipment and that it is good, safe, serviceable and fit for the use intended, unless within (5) days after Equipment is received, the Lessee notifies Lessor by registered mail that the Equipment is not serviceable, specifying the reason.

(Doc. 80-1, at 6 of 28).

Section 18 is written in the same font used in the document and does not have a description concerning its contents unlike 19 out of 21 of the provisions in the contract. Furthermore, unlike other provisions, there is nothing bolded or in all capital letters as found in sections 2, 3, 4 and 20.  Section 18 is at the heart of the dispute as it purports to create an "as-is" contract waiving all warranties.  Specifically it states:

> 18.  Lessee agrees that the equipment leased hereunder is leased "as is" and is of a size, design and capacity selected by Lessee and that Lessee is satisfied that the same is suitable for Lessee's purposes, and that Lessor has made no representation or warranty with respect to the suitability or durability of said Equipment for the purposes and uses of Lessee, or any other representation or warranty, express or implied, with respect thereto, including the implied warranties of merchantability and fitness for a particular purpose.

(Doc. 80-1 at 6 of 28).  Section 21 is the "merger" provision wherein the lessee agrees that the "agreement constitutes the full agreement between the parties," ending with the clause, "No representations of any kind have been made by either party to induce making or signing this agreement except as forth herewithin." (Doc. 80-1 at 6 of 28).

In response, Target maintains that during the negotiations, Target discussed with Barcelona's representatives the nature of the work for which the Crane was to be used and

requested its assistance in providing equipment that would be fit for Target's intended use. Specifically, the Crane would be required to have sufficient load capacity to handle H-pile sections of the size and weight necessitated by the specifications of the Subcontracts. In addition, Target argues that in the negotiations it is was made clear that the Crane would have to be capable of beginning work promptly upon delivery and sustaining the production rate necessary to maintain Target's construction schedules which were rigorous due to the hard completion deadline of June 1, 2011–the first day of hurricane season. Thus, Target maintains that Barcelona suggested the Crane that was leased and that it relied on Barcelona's representations that the Crane would fulfill these requirements.

Target argues that it was unaware at any time during the correspondence in negotiating the terms of the lease that Barcelona intended to disclaim the warranties it provided to Target during the formation of the Lease. Barcelona did not direct Target's attention to the warranty disclaimer language in the Equipment lease; it did not discuss a waiver of warranties at any time during the confection of the contract. Thus, Target maintains that it did not actually become aware of any provisions of the Lease which purported to disclaim any warranties on behalf of Barcelona prior to executing the Lease. Target contends that had it known of the warranty disclaimer, it would not have executed the Equipment Lease because it was only due to Barcelona's affirmative representations as to the crane's fitness for Target's intended use and its production capabilities that Target leased the crane in question. Target maintains that the Lease does not require Target to indemnify Barcelona for damages to the Crane where the Crane was delivered to Target in a defective condition and the damages are the result of the those defects.

4

As further evidence that there are material questions of fact at issue, Target contends that there were a series of failures of the crane. First, it argues that a section of the boom and other parts were missing when it was installed such that the Corps would not certify it for use causing a ten day delay before the Crane was placed into service. Moreover, the Crane allegedly malfunctioned and required repair no less than five to seven times about which problems Barcelona was aware and allegedly hired another concern, Northshore Crane, LLC, to perform the necessary repairs. These allegations are the basis upon which Target filed its cross-claim against Barcelona for breach of contract in its duty to provide Target with a crane that was in good working condition.

**Standard for Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v.*

5

*Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

**Analysis**

To begin, considering the innumerable factual disputes, outlined above, this motion has absolutely no merit. Regardless of the "as is" provision and the waiver of express and/or implied warranties, it is clearly disputed whether the crane as delivered was in proper working order. The application of Section 17 styled "ACCEPTANCE OF EQUIPMENT" is impossible considering that it is not even clear when the entirety of the crane was actually delivered to Target and that Target was allegedly in constant contact with Barcelona concerning the on-going

failures and malfunctions of the crane. Furthermore, there is a question of fact as to whether Target actually damaged the Crane after it was received.

As to Section 18, the alleged waiver of the implied warranties of merchantability and fitness, and the allegedly waiver of the express warranty that this crane was suitable or sufficiently durable for the job for which it was leased, the contract at issue does indeed provide that "This contract is deemed to be made in the State of Florida." (Doc. 80-1 at 5 of 28, Section 10). As stated in *Bluewater Trading LLC v. Fountaine Pajot, S.A.*, 2008 WL 895705 (S.D.Fla. April 2, 2008):

> Under Florida law, "to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous." Fla. Stat. §672.316 (2007). A determination as to whether or not a term is conspicuous is a decision for the court. Fla. Stat. § 671.201(10) (2007). "Language in the body of a record or display in type larger than that of the surrounding text; in a type, font, or color in contrast to the surrounding test of the same size; or set off from surrounding test of the same size by symbols or other marks that call attention to the language: is deemed to be conspicuous.

*Id.* at *3. Clearly, there is nothing "conspicuous" about Section 18 of the Lease which leads the Court to question the enforceability of this contractual provision as to the implied warranties. It is only one of two sections that is not preceded by a specific topic header and there is nothing to set it apart. Nonetheless, the Court is unwilling at this time to make a positive finding in favor of a non-moving party as to enforceability of the implied warranties in the Lease. Furthermore, the Court finds that the questions of fact are too innumerable to make any substantive ruling on the waiver of the express warranties as well. At this point, all the Court will find is that there are material questions of fact at issue. Accordingly,

7

**IT IS ORDERED** that Barcelona Equipment, Inc.'s Motion for Partial Summary Judgment Against Target Construction, Inc. (Doc. 80) is **DENIED**.

New Orleans, Louisiana, this 19th day of November, 2012.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**