UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of  BARCELONA EQUIPMENT, INC. | CIVIL ACTION |
| VERSUS | NO. 11-2183<br>C/W 11-2295<br>C/W 11-2983<br>C/W 12-0496<br>C/W 12-0708<br>C/W 12-0787<br>C/W 12-0838 |
| DAVID BOLAND, INC., INC., ET AL. | SECTION "K"(5) |

Re: *Target Construction Inc. v. Vice Construction Co., Inc.*, C.A. 12-708

## ORDER AND REASONS

Before the Court is a Motion to Dismiss (Doc. 148) filed by American Piledriving Equipment, Inc. ("American Piledriving") who seeks the dismissal of all claims alleged by Target Construction, Inc.("Target") as set forth in the First Amended and Supplemental Complaint (Doc. 142).  Specifically, American Piledriving contends that Target has failed to state a claim for:

(1) exemplary or punitive damages as a result of the alleged intoxication of an employee of Vice Construction Co, Inc. ("Vice");

(2) for "hidden defects" in a product made by American Piledriving, because the sole remedy for such damages arises only under the Louisiana Products Liability Act, and Target has not set forth such a claim; and

(3) for economic losses under the Louisiana Products Liability Act, because Target's alleged economic losses are too far removed from the alleged product defect to be compensable under Louisiana law.

As Target has stipulated that it does not seek exemplary or punitive damages from American Piledriving, this issue is moot. (Doc. 162 at 11 n.11).  As to the other issues, having reviewed the pleadings, memoranda and the relevant law, the Court finds the motion to have merit.

**Background**

This suit, *Target Construction, Inc. v. Vice Construction Co., Inc.*, C.A. No. 12-708, is one of seven suits arising out of two United States Army Corps of Engineers projects, the Louisiana Lakefront Airport T-Walls (LPV) bearing Contract Number W912P8-10-C-0026 ("the Airport Contract") and the Louisiana Segnette Park Floodwall (WBV-24) bearing Contract Number W912P8-10-0079 ("the Segnette Contract").  With respect to both projects, David Boland, Inc. ("Boland")  agreed to perform certain work with respect to them and  a payment bond was obtained for the work from Travelers Casualty and Surety Company of America.  Target Construction, Inc. ("Target") and Boland then entered into a Subcontract Agreement for each project and Western Surety delivered a private payment bond in favor of Target relative to those subcontracts.  Target thereafter entered into a number of subcontract agreements with various vendors.

In the instant case, Target contracted with Vice Construction Co, Inc. ("Vice") to perform certain standard pile driving and low profile driving work on the Bayou Segnette Project and Lakefront Airport Project. (First Amended and Supplemental Complaint of Target Construction, Inc., Doc. 142, ¶ 7) ("First Amended Complaint").  Target allegedly hired Vice based on Vice and its representatives' representation "that the pile driving equipment to be employed by Vice

was sufficient to adequately drive the H-pile segments necessary" for this work to be accomplished. (First Amended Complaint, ¶ 8).

On April 16, 2011, a fatality occurred on the Bayou Segnett Project when a Vice employee "came to the job site while under the influence of alcohol" and operated heavy equipment rented by Vice from American Piledriving." (First Amended Complaint ¶¶ 12-13). Target alleges that the fatality was proximately caused in whole or in part, by hidden defects in the American Piledriving equipment Vice rented. (First Amended Complaint, ¶ 14). As a result of the fatality, the Bayou Segnette Project was placed on hold from April 17, 2011 through April 25, 2011, (First Amended Complaint, ¶ 15), and the low-profile work on that project was prohibited from April 26, 2011 to May 10, 2011. (First Amended Complaint, ¶ 16). In addition, work was shut down on the Lakefront Airport Project from April 17 to April 19, 2011, and Vice did not complete any further work on the Lakefront project until April 27, 2011. Target alleges that it "was forced to hire a third-party pile driving company to perform work which Target had already hired Vice to perform. (First Amended Complaint, ¶ 19).

In Count II of Target's Amended Complaint captioned as a "negligence claim," Target alleges that to the extent that hidden defects in the American Piledriving equipment might be determined to be a proximate cause of the fatality which caused the delays for which Target seeks compensation, Target is entitled to recover from American Piledriving "all direct and consequential damages resulting from such defects," including damages arising from the delays on the two Projects. Thus, the issue before the Court is whether Target could be entitled to compensation for indirect economic loss from American Piledriving where Target did not suffer any physical damage to its property.

**Applicable Standard for a Motion to Dismiss**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.1980). In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007), the Supreme Court "retired" the *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Id.* at 563, 127 S.Ct. at 1969.

Thus, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In Re: Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir.2007) quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965 (internal citations omitted). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief."

*Lowery v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, at 601 (1969).

**Analysis**

In this instance, Target seeks to recover economic losses where the alleged damage does not arise from any injury to Target's property or employee. Furthermore, Target has no contractual relationship with American Piledriving. Specifically, Target has sued for the economic damages it incurred as a result of the regulatory delays allegedly caused by the death of a Vice employee. That employee, while in an allegedly inebriated state, was killed when he was operating allegedly defective equipment provided to Vice by American Piledriving.

Louisiana courts in the past used a mechanical *per se* approach which depended on a claimant having some proprietary interest in the damaged property in order to recover indirect economic losses caused by a negligent injury to property that interfered with a contractual relation. *PPG Indus., Inc. v. Bean Dredging*, 447 So.2d 1058, 1060 (La. 1984). However, in the *PPG* decision, the Supreme Court for the State of Louisiana found that such a bright-line approach was not appropriate. Instead, it adopted a duty-risk analysis to make that determination. *See also Phillips v. G&H Seed Co.*, ___ So.3d ___, 2012 WL 716193, *6 (La. App. 3rd Cir. March 7, 2012) (duty-risk analysis, rather than the per se exclusionary/proprietary interest rule must be applied by district court to determine the scope and extent of duties of insecticide marketer and sellers of rice seed to crawfish buyers, processors and resellers harmed when defendants' actions allegedly caused the destruction of the 1999-2000 farm-raised crawfish crop).

As the Louisiana Supreme Court stated in *PPG*:

> Rules of conduct are designed to protect *some* persons under *some* circumstances against *some* risks. Malone, *Ruminations on Cause-in-Fact,* 9 Stan. L. Rev. 60 (1956). Policy considerations determine the reach of the rule, and there must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered. *Hill v. Lundin & Assoc., Inc.* 260 La. 542, 256 So.2d 620 (1972) A judge, when determining whether the interest of the party seeking recovery of damage is one that falls within the intended protection of the rule of law whose violation gave rise to the damages, should consider the particular case in terms of the moral, social and economic values involved, as well as with a view toward the ideal of justice. See *Entrevia v. Hood*, 427 So.2d 1146 (La. 1983).

*PPG*, 447 So.2d at 1061.

In the *PPG* case, Bean Dredging's dredging operations damaged a gas pipeline owned by Texaco. Texaco had a contract to supply gas to PPG. As a result of the damage to the pipeline, PPG was forced to obtain gas from other sources, so PPG sued Bean Dredging, seeking recovery of the additional costs expended to obtain gas. The Supreme Court found that damages to the economic interest of PPG caused by a Bean Dredging's negligent injury to the Texaco pipeline which prevented the Texaco's performance of its contract to supply natural gas to PPG did not fall within the scope of protection intended by the law's imposition of a duty on dredging contractors not to damage pipelines negligently.   The court stated:

> There is clearly an ease of association in the present case between the rule of law which imposes a duty not to negligently damage property belonging to another and the risk of injury sustained by Texaco because of the damage to its property. As noted however, a rule of law is seldom intended to protect *every* person against *every* risk. It is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person whose only interest in the pipeline damaged by the tortfeasor's negligence arose from a contract to purchase gas from the pipeline owner. It is highly unlikely that the moral, social and economic considerations underlying the imposition of a duty not to negligently injure property encompass the risk that a third party who has contracted with the owner of the injured property will thereby suffer and economic loss.

6

*Id.*  The court also reasoned that imposition of that kind of responsibility on the tortfeasor could create liability "'in an indeterminate amount for an indeterminate time to an indeterminate class.'"  *Id.*  citing *Ultramares Corp. v. Touche* 225 N.Y. 170, 179, 174 N.E. 441, 444 (1931).

The "ease of association" in the instant situation is even more attenuated that the facts of the *PPG* case.  American Piling , like Bean Dredging, only provided **equipment** to Vice; it did not **operate** the equipment.  It was not American Dredging's employee who apparently caused the accident; it was Vice's employee whom Target alleges was intoxicated when he allegedly helped cause his own death.  It was only as a result of this death, that the delays allegedly caused Target the economic damages which it seeks.  Clearly, as *PPG* teaches, it is much more difficult to associate the same rule of law, in terms of the moral, social and economic values involved, with the risk of injury and the economic loss sustained by the person, here Target,  whose only interest in the death of a Vice employee caused by American Piledriving's allegedly defective product and the resultant delay, arose from a contract to perform services for the Corps in a timely manner.

One instance where the Louisiana Supreme Court found an ease of association was in *Cleco Corp. v. Johnson*, 795 So.2d 802 (La. 2001).  In that instance, Leonard Johnson backed a truck into a utility pole owned by Cleco Corporation which caused a voltage surge which allegedly caused property damage to electrical appliance and equipment of various Cleco customers.  Cleco paid 187 residents and business in the area to compensate them for damages to their electrical equipment.  The issue there was whether Cleco's customers had a claim against Johnson for the physical damage to the customers' property after Johnson struck a utility pole owned by Cleco.

The Louisiana Supreme Court differentiated *Cleco* from *PPG* stating, "Unlike the plaintiff in *Bean Dredging*, Cleco is not attempting to recover from any economic damages it sustained as a result of damage to a third party's property.  By contrast, it is seeking to recover amounts it expended as a result of damage to its own property, the pole, which led to damages to the customers' property.  There is no "indeterminate class" in this case."  In contrast, if American Piledriving were to be liable for Target's damages, then why would it not be liable for persons or other subcontractors who could not work or lost money on the project itself during the same statutory delays?  The flow of potential claimants would be indeterminable

As this Court noted in *Anderson v. T&D Machine Handling, Inc.*, 1996 WL 684449 (E.D.La. Nov. 22, 1996), when confronted with a similar inquiry:

> In *Babin v. Texaco, Inc.*, the defendant drilling company pierced the shaft of a salt mine causing it to flood.  449 So.2d 718 (La. App. 3d Cir.), *writ denied*, 456 So.2d 165 (La. 1984).  The employees of the mine, who were laid off as a result of the flood, sued for loss of income, retirement benefits, and fringe benefits.  *Id.* at 719.  Citing *PPG*, the court held that the defendant's duty to avoid damage to another party's property did not encompass the risk that the party's employees might be laid off and lose wages as a result of that defendant's negligence.  *Id.* at 720.  The plaintiffs attempt to distinguish their action as negligent interference with the contractual relationship was rejected.  *Id.* at 720.  The court stated:
>> As we read the Supreme Court decision in *PPG*, it is based purely on the policy consideration under a duty-risk analysis that the damages to the economic interest of a contract purchaser of natural gas did not fall with the scope of protection intended by the laws' imposition of a duty.
> *Id.*

*Anderson* at *2.  This Court in *Anderson* found that as a matter of law, employee plaintiffs could not recover for indirect consequential damages under a duty-risk analysis because the economic loss resulting from a reduction in sales was not within the scope of the defendant's duty to

8

operate a forklift in a non-negligent manner when the defendant was replacing equipment at the injured business.

In *Wiltz v. Bayer Cropscience, Limited Partnership*, 645 F.3d 690 (5th Cir. 2011), the Fifth Circuit applied the Louisiana Supreme Court's approach in *PPG* . In *Wiltz*, defendant Bayer's product had allegedly destroyed the crawfish crop owned by crawfish farmers in 1999-2000 season, and that as a result, the farmers were unable to supply crawfish to the plaintiff crawfish buyers/processors. Those plaintiffs sued for their loss. The Fifth Circuit upheld the district court's dismissal of those claims on summary judgment as it found that plaintiffs had suffered purely economic losses that are not recoverable in tort based on its interpretation and application of *PPG*'s duty-risk analysis. Again, Target is like the crawfish buyers/processors who were denied their supply of crawfish; Target simply incurred expenses based on at best a product liability failure arising out of a contract between Vice and American Piledriving.

As to the issue that the only true cause of action against American Piledriving lies under the Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 (LPLA) and that Target has not properly plead this cause of action, the Court finds the contention irrelevant. This "ease of association" duty-risk analysis is applicable where damages are sought for a party's negligence as well as where damages being sought under the Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 (LPLA). *Wiltz*, 645 F.3d at 698-99. Thus, regardless whether the claim is one in tort or under the LPLA, the same analysis applies. Target has no cause of action available to it against American Piledriving. Accordingly, finding no just reason for delay pursuant to Fed. R. Civ. P. 54(b),

**IT IS ORDERED** that the Motion to Dismiss (Doc. 148) filed by American Piledriving Equipment, Inc. is **GRANTED** and that judgment be entered in favor of American Piledriving Equipment, Inc. and against Target Construction Company dismissing with prejudice Target Construction Company's claims against American Piledriving with Target Construction Company to bear all costs as provided under Fed. R. Civ. P 54(c).

New Orleans, Louisiana, this __30th__ day of January, 2013.

                                        **STANWOOD R. DUVAL, JR.**
                            **UNITED STATES DISTRICT COURT JUDGE**