UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of BARCELONA EQUIPMENT, INC. | CIVIL ACTION |
| VERSUS | NO. 11-2183<br>C/W 11-2295<br>C/W 11-2983<br>C/W 12-0496<br>C/W 12-0708<br>C/W 12-0787<br>C/W 12-0838 |
| DAVID BOLAND, INC., INC., ET AL. | SECTION "K"(5) |

Re: *Target Construction, Inc. v. David Boland, Inc., et al.*
C.A. No. 12-496

## ORDER AND REASONS

Before the Court are a Motion for Partial Summary Judgment of Target Construction, Inc. ("Target") (Doc. 250) and a Cross Motion for Partial Summary Judgment of David Boland, Inc. ("Boland") and Travelers Casualty and Surety Company of America ("Travelers") (Doc. 336). Having reviewed the pleadings, exhibits, affidavits, memoranda and the relevant law, the Court finds that there are material questions of fact which preclude the granting of either motion.

The instant suit arises out of work performed for the Army Corps of Engineers ("the Corps") pursuant to a contract awarded to Boland by the Corps with respect to a certain flood protection construction project bearing USACE Project Number W912P8-10-C ("Segnette State Park Floodwall Project" or "the Segnette Project"). The work consisted of removing the existing concrete I-Wall and sheet piling, removing the existing steel flood gates and gate monoliths in the project area, and replacing them with new concrete T-Walls, steel flood gates and gate

monoliths. (Doc. 281-4, page 2 of 107)[1]. Boland obtained a payment bond from Travelers Casualty and Surety Company of America ("Travelers") with respect to this project. Subsequently Boland entered into a subcontract agreement numbered 208S001 ("the Subcontract Agreement") which provided for Target to undertake the performance of a part of the Segnette Project.

The scope of the work to be done was set forth in Exhibit "A" referenced in ¶ 2 of the Subcontract which provided:

> The Subcontractor shall furnish and pay for all labor, materials, testing, scaffolding, machinery, transportation, tools, apparatus, shop drawing, samples, services and equipment necessary to perform and satisfactorily complete the work as depicted on the contract drawings and set forth in the following sections(s) of the specifications.

(Doc. 336-7, Page 13 of 79). Included in these plans and relevant to this motion was Section Number 03 31 00.00 12 CAST-IN-PLACE STRUCTURAL CONCRETE.

Target contends that it has completed all work contemplated under its construction subcontract with Boland, and yet neither Boland nor Travelers (as Boland's payment-bond surety) has remitted full payment to Target for Target's work as required under the terms of the relevant contracts. In its forty-eight paged Motion for Summary Judgment supported by a 27-paged affidavit referencing over 200 pages of exhibits, Target contends that it is entitled $3,855,176.53 under the circumstances presented. These alleged amounts owed have been calculated based on Target's issuing a Freedom of Information Act ("FOIA") request seeking documents evidencing the amount of payment requested by Boland for the Project. An October 22, 2012 payment application from Boland to the Corps was produced. With that a:

---

[1] The Court will use the docket number and page numbers provided by the Court's docketing system in order to identify documents in this opinion.

> Target representative incorporated the information contained therein, together with information contained in voluminous other items of evidence–originals or copies of which underlying evidence have been provided to Boland and Travelers by Target and/or are already available to Boland and Travelers as part of Boland's job file for the Project–into a spreadsheet summarizing the work completed by Target on the Boland Subcontract and the outstanding amounts owed by Target by Boland as a result of such work.

(Doc. 250-2, Affidavit of Jeffery Fegert, President of Target, at ¶ 15, page 5 of 200).

Based on this "information", Target contends that it is owed:

a. $1,141,902.01 which is the difference between the amounts submitted to the Corps by Boland for the work at issue and the amount that Boland has paid to Target;

b. $73,710.19 for 52 days of "utility" delay damages attributable to third-parties;

c. "import" and "embankment" costs for which Target was allegedly under-compensated by virtue of Boland's renegotiating terms of the contract with the Corps without its participation;

d. $1,003,630.52 for 121 contract days delay arising from the import and embankment problems encountered;

e. additional amounts for fill, embankment, backfill, asphalt removal and import issues.

Under Fed. R. Civ. P. 56(c)((1)(B) supporting materials for a motion for summary judgment must show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. These "materials" do not meet that standard.

3

Boland has demonstrated in its opposition that there are substantial issues of fact with respect to Target's contentions. To begin, it appears that the Corps found that the top of the T-wall as constructed by Target was not completed within allowable vertical construction tolerances. As such, Boland provided countervailing documentary proof that Target refused to perform required corrective work resulting in Target having breached specifically Paragraph 10.B of the Subcontract Agreement . (Doc. 336-7 at 5 of 79). Moreover, Boland maintains that the Government is still reviewing the completion of this deficiency and has yet to accept the remedial work performed by Boland, on behalf of Target and Western in this regard. (Doc. 281 at page 6 of 42). Under Paragraph 8.C of the Subcontract, it states "In case of a breach for default by the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Subcontractor Agreement until the Work is wholly completed to the Contractor's satisfaction." Thus, Boland argues summary judgment is inapplicable.

In addition, Boland maintains that certain Change Orders in particular Subcontract Agreement Change Orders FIFTEEN and SIXTEEN which were executed by Alex Swayze, an authorized representative of Target preclude Target's arguments that it has been underpaid. Each of these Subcontract Agreement Change Orders contains the following language, "Subcontractor acknowledges that all claims for additional time, impact, delay and/or disruption have been included in the revised subcontract amount. " Doc. 336-7, Pages 27and 28 of 79). In addition, Boland maintains that Target was involved in the negotiations concerning the unit cost changes and cannot be heard to complain of same at this juncture.

To that end, Boland has filed its own Cross-Motion seeking judgment dismissing Target's claim for $1,003,630.52 in delay damages for completion of "embankment" work due to the need

for additional "import" material and an additional $949,949.00 for costs or "impact burdens" associated with "embankment" work based on an alleged "stipulated" contract amount.  In response, Target maintains that the terms of these contracts are not clear and that by virtue of the correspondence and on-going negotiations and reliance on its part during the on-going work, Boland is not entitled to judgment as sought.

The Court finds that the facts and circumstances surrounding this work are in such dispute that it is impossible to render judgment in any regard.  Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment of Target Construction, Inc.  (Doc.  250) and a Cross Motion for Partial Summary Judgment of David Boland, Inc.  and Travelers Casualty and Surety Company of America (Doc.  336) are **DENIED**.

New Orleans, Louisiana, this 11th day of July, 2013.

STANWOOD R.  DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE