UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of  BARCELONA EQUIPMENT, INC. | CIVIL ACTION |
| VERSUS | NO. 11-2183<br>C/W 11-2295<br>C/W 11-3028<br>C/W 12-0496<br>C/W 12-0708<br>C/W 12-0838 |
| **DAVID BOLAND, INC., INC., ET AL.** | SECTION "K"(5) |

Re:    Target Construction, Inc.  v.  Bauer-Pileco, Inc.
       C.A. NO. 11-2295

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment of Target Construction, Inc. ("Target"). (Doc. 361). Target seeks judgment that Bauer-Pileco, Inc. ("Pileco") made expressed and implied warranties as to the fitness of certain construction equipment that it provided to Target and that a warranty waiver disclaimer provision contained in the relevant equipment lease is ineffective as a matter of both Louisiana and Texas law. Having reviewed the pleadings, memorandum, affidavits, exhibits and the relevant law, the Court finds some merit in this motion.

**Background**

The United States Army Corps of Engineers (" USACE" or "the Corps") as owner, contracted with David Boland, Inc. ("Boland"), as prime contractor, to perform the complete construction of USACE Project Number W912P8-10-C-0079 near the Lakefront Airport in Orleans Parish, Louisiana ("the Lakefront Airport Project") as well as another project, USACE

Project Number W912P8-10-C00026, near Bayou Segnette State Park in Jefferson Parish, Louisiana ("the Bayou Segnette Project").  Boland, as prime contractor, entered into a subcontract agreement with Target, to provide certain work on both projects.  In particular, with respect to the Lakefront Airport Project, this work included the driving of paired segments of sheetpile which would be linked together to form an I-wall structure.

Based on the 28 U.S.C. § 1746 Declaration of Jeffery C. Fegert, the President of Target, (Doc.  361-3), Target filed in conjunction with this motion  its Statement of Uncontested Material Facts (Doc.  361-2) ("Target Uncontested Facts")[1] based upon which it contends that Pileco's sales representative John Burns solicited business by representing that Pileco had piledriving equipment for sale or lease that would meet Target's needs.  (Target Uncontested Fact No.  5). Target maintains that it made clear to Pileco the particular purpose for which the piledriving equipment was to be used and that Target was relying on Pileco's expertise to select the appropriate piece of equipment for that purpose.  (Target Uncontested Fact No.  6).  In particular, Target contends that it apprised Pileco of the size, weight and other physical dimensions of the sheetpile segments as well as the materials out of which the sheetpile segments were fabricated.  (Target Uncontested Fact No.  7).  Furthermore, Target alleges that it informed Pileco that the requested piledriving equipment had to be capable of driving sheetpile segments at a sufficient rate such that Target could maintain a tight construction schedule it had contracted to perform for the Corps.  (Target Uncontested Fact No.  8).  The relevant negotiations apparently proceeded between Target's employees Eddie Riggs and Joyce Jennings and John Burns, the Pileco representative.

---

[1] Unless otherwise noted and as explained *infra* most of the relevant "uncontested" facts set forth herein are hotly contested by Pileco.

Target alleges that Pileco selected a piledriving hammer, the RG19T, for Target's use on the Lakefront Airport Project (Target Uncontested Fact No. 9) and that Pileco represented to Target that the RG19T would be capable of driving sheetpile segments of the precise size, wight and material makeup required by Target and in the same manner in which Target intended to drive those sheetpile segments. (Target Uncontested Fact No. 10). Specifically, Target contends that Pileco represented to Target that the RG19T would be capable of driving 60-foot-long sheetpile at the rate of 50 paired segments per day. (Target Uncontested Fact No. 11). Based on these alleged representations, Target entered into a rental agreement for the machine.[2]

Paragraph 17 of the Pileco Rental Contract which was executed by Target on July 20, 2010, provides:

> 17. PILECO shall not be responsible or liable for any losses, expenses or damages, including but not limited to, consequential damages, or lost profits suffered or claims made by [TARGET], any of its affiliates or any other person or entity, directly or indirectly, arising in connection with the use, inability to use, malfunction, misuse or failure of the Equipment for any purpose whatsoever. . . .

(Target Uncontested Fact No. 16)[3]. Target maintains that Pileco never discussed this waiver of warranties or directed Targets' attention to this warranty disclaimer language. (Target Uncontested Fact No. 13).

---

[2] While there was a sales agreement signed at the same time, it is uncontested that the terms of that agreement were never met. Therefore, the provisions of that contract are irrelevant for purposes of this motion. It is likewise uncontested that this rental agreement was executed on this day.

[3] This "fact" is also uncontested.

3

The RG19T was delivered to the Lakefront Airport Project site and put into use in early August, 2010.  (Target Uncontested Fact No.  21).[4]  Target allegedly experienced problems immediately after it began to use the equipment to drive 60-foot-long sheetpile segments.  (Target Uncontested Fact No.  22).  Target contends that it notified Pileco, and that Pileco dispatched a team to train Target in the operation of the RG19T.  (Target Uncontested Fact No.  23).  Nonetheless, Target maintains that problems continued and that after about 36 days, Target discontinued its use in favor of a conventional vibrating hammer and crane.  (Target Uncontested Fact No.  26)

Target contends that the failure of the RGT19T to perform in the manner allegedly warranted resulted in substantial losses to Target which are the subject of the instant lawsuit.  Target argues that based upon the 50-paired-segments-per-day rate promised by Pileco, Target had budgeted 33 days of crew time in order to drive the 1485 paired sheetpile segments necessary to construct the I-wall structure on the Lakefront Airport Project.  Thus the rental rate for the RG19T should have amounted to no more $280,000.

Instead, Target maintains that over the 36 days it used the Pileco equipment, only 15 paired segments were successfully driven.  (Target Uncontested Fact No.  27)  It was forced to replace the RG19T with a conventional vibrating hammer and crane which then required 110 additional days to complete the Corps project.  (Target Uncontested Fact No.  29). Because Target hade a completion deadline of June 1, 2011, Target incurred additional costs due to its need to accelerate its work operations.  (Target Uncontested Fact No.  30).  Target thus calculates that rather than expending $280,00 as it expected had the RG19T operated as

---

[4] Target Uncontested Fact Nos.  22-27 and 29-32 Pileco maintains are not germane to the pending motion, so it states that it will "allow them to be deemed admitted for purposes of the pending motion.

promised by Pileco, Target incurred costs of more than $3,000,000.00.  (Target Uncontested Fact No.  33).

Based on the 28 U.S.C. § 1746 Declaration of John Burns (Doc.  380-5), Pileco denies categorically that there were any substantive conversations with any representative of Target with respect to (a) the rate at which piledriving equipment leased by Pileco was capable of driving sheetpile segments or (b) the ability of the equipment leased to meet any particular production rate desired by Target.  (28 U.S.C. § 7146 Declaration of John Burns, Doc.  380-1, ¶ 2).  More specifically, John Burns, who was as noted a sales representative at the time of the rental agreement,  averred, "At no time did I nor, to my knowledge, any other employee of Bauer-Pileco represent to Target that the RG19T would be capable of driving 60-foot sheetpile at the rate of 50 paired segments per day." (28 U.S.C. § 1746 Declaration of John Burns, Doc. 380-1, ¶ 3).

**Standard for Motion for Summary Judgment**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has

carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor."  *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment.  The Court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

**Analysis**

The subject contract contains a choice of law provision at Paragraph 24 which states, *inter alia,* "This Rental Contract and all its terms and conditions shall be interpreted and enforced in accordance with the laws of the State of Texas."  Under La. Civ. Code art. 3540, "All other issues of conventional obligations are governed by the law expressly chosen or clearly

relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." As stated in *Contintental Eagle Corp. v. Tanner & Co. Ginning*, 663 So.2d 204 (La. App. 3rd Cir. 1995):

> "It is well established that where the parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written. (citations omitted) A choice of law provision in a contract is presumed valid until it is proved invalid. The party seeking to prove such a provision is invalid bears the burden of proof. *Delhome Industries, Inc. v. Houston Beechcraft,* 669 F.2d 1049 (5th Cir. 1982).

*Id.* citing *Whitehurst v. James Noel Flying Services*, 509 So.w2d 1035, 1037 (La. App. 3rd Cir. 1987). Considering that both Louisiana and Texas have similar provisions with respect to liability waiver, clearly this contract provision as interpreted under Texas law does not contravene the public policy of Louisiana. Thus, the Court will apply Texas law to this contract dispute.

Texas state law recognizes an implied warranty of fitness for a particular purpose in lease contracts as set forth in Tex. Bus. & Com. Code § 2A213. It provides:

> Except in a finance lease, if the lessor at the time the lease contract is made has reason to know of any particular purpose for which the goods are required and that the lessee is relying on the lessor's skill or judgment to select or furnish suitable goods, there is in the lease contract an implied warranty that the goods will be fit for that purpose.

Tex. Bus. & Com. Code § 2A213. Texas law also provides the following as concerns exclusions or modification of warranties:

> (b) . . .Subject to Subsection (c) to exclude or modify an implied warranty of fitness the exclusion must be by a writing and be conspicuous. Language to exclude all implied warranties of fitness is sufficient if it is in writing, is conspicuous and states, for example, "There is no warranty that the goods will be fit for a particular purpose."

7

Tex. Bus.& Com. Code § 2A.214(b).

"Conspicuous" is defined as follows:

(10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

(A) a heading in capitals equal to or greater in size that the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(B) language in the body of a record or display in larger type that the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Tex. Bus. & Com. Code § 2A.201.

Having reviewed the contract (Doc. 380-2), the Court finds unequivocally that this provision found in Paragraph 17 of the Rental Agreement which attempted to exclude implied warranties is not conspicuous and is therefore unenforceable. There is no difference in type or font. Simply put, Paragraph 17 is buried in this contract; it is not written, displayed, or presented in such a manner that a reasonable person against which it is to operate ought to have noticed it. Thus, to the extent any implied warranty exists, it is enforceable.

However, considering the manner by which such an implied warranty arises under Texas law, that is that Pileco would have had "reason to know of any particular purpose for which the goods are required and that Target relied on the Pileco's skill or judgment to select or furnish suitable goods," there are questions of fact that preclude any judgment to that end. While the Court recognizes that the affidavit of Jeffery E. Fegert is the corporate affidavit of Target, there are serious questions as to the reliability of the affirmations as demonstrated by the deposition testimony of Mr. Fegert as presented by Pileco in its opposition to this motion. Mr. Fegert

testified that he did not have any direct negotiations with Pileco, and that he did not speak to Eddie Riggs who had negotiated and signed this agreement on behalf of Target prior to Mr. Fegert's preparing and signing the subject corporate affidavit.  It is equally unclear upon what basis Mr.  Fegert attested on behalf of Target that Target provided Pileco with the size of the sheet piles or the needed production rate to be used at the Lakefront Project . These facts form the linchpin of Target's suit. Whether the implied warranties exist as alleged by Target depends on competent evidence of Target's telling Pileco of its needs and relying on Pileco to deliver equipment that met those needs.  The Target/Fegert declaration and the Pileco/Burns declaration demonstrate that there are material questions of fact in that regard. Thus, the Court shall not make enter judgment that an implied warranty exists.

As to any express warranties which Target asks the Court to recognize, Texas law provides:

> (a) Express warranties by the lessor are created as follows:
>
>> (1) any affirmation of fact or promise made by the lessor to the lessee that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise. . . .
>
> (b) It is not necessary to the creation of an express warranty that the lessor use formal words, such as "warrant" or guarantee," or that the lessor have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the lessor's opinion or commendation of the goods does not create a warranty.

Tex. Bus. & Com. Code § 2A210.

Based on the same rationale stated above with respect to the implied warranty, the Court finds that there are material questions of fact that preclude entry of judgment with respect to any express warranties concerning the RG19T.   Accordingly,

**IT IS ORDERED** that the Motion for Partial Summary Judgment of Target Construction, Inc. (Doc. 361) is **GRANTED** insofar as Paragraph 17 of the Rental Agreement is unenforceable as to implied warranties and **DENIED** with respect to any findings as to implied or express warranties provided by Pileco.

New Orleans, Louisiana, this 23rd day of July, 2013.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**