UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES FOR THE USE AND BENEFIT OF BARCELONA EQUIPMENT, INC. | CIVIL ACTION<br><br>NUMBER: 11-2183<br>AND CON. CASES |
| VERSUS | |
| DAVID BOLAND, INC., ET AL. | SECTION: "K"(5)<br>**PERTAINS TO: 12-0838** |

## ORDER AND REASONS

Before the Court is a Motion for Leave to Amend Complaint (rec. doc. 638), filed by Plaintiff, Target Construction, Inc. ("Target"). That Motion has been met with an Opposition Memorandum (Rec. doc. 645) filed by Defendants, Technical Works, Inc.; Ingrid Arciniaga; and Robert Arciniaga ("Defendants"). Target filed a Reply Memorandum (Rec. doc. 651) and thereafter this Court held oral argument on Target's motion. (Rec. doc. 653). Following that argument, the Court ordered the parties to submit supplemental memoranda, after which the matter would be taken under advisement. (*Id.*).

The Court has now received the supplemental submissions of Plaintiff (Rec. doc. 661) and Defendants (Rec. doc. 662). Based upon all of the aforementioned pleadings and

counsel's arguments at the above-referenced hearing and for the reasons set forth below,[1] Target's Motion is GRANTED IN PART and DENIED IN PART.  Specifically, Target is granted leave to file an amended complaint that names the additional party they seek to add, Technical Works of California, LLC ("TWI, LLC").  However, Target is denied leave to add any claims against Defendants in this litigation that seek recovery or indemnity related to or arising out of the award against it in the American Arbitration Association Case Number 54-110-Y-00690 11 (the "Michigan Arbitration").

## I.     FACTUAL AND PROCEDURAL BACKGROUND AND THE ALLEGATIONS OF THE ORIGINAL COMPLAINT

Target is a Nevada corporation authorized to do business in Louisiana.  ("Complaint, ¶ 1).  In May 2010, the United Sates Army Corps of Engineers (the "Corps") contracted with David Boland, Inc. ("Boland") as prime contractor to perform the complete construction of a Corps project (USACE Project Number W912P8-10-C-0079) near the Lakefront Airport in New Orleans, Louisiana ("the Lakefront Airport Project").  (Complaint ¶ 21).  The Corps also contracted with Lakeshore Engineering Service, Inc. ("Lakeshore"), as prime contractor, to perform the complete construction of another Corps project (USACE Project Number W912P8-10-C-0050) near the Cross Bayou drainage structure in Destrehan, Louisiana ("the Cross Bayou Project").  (Complaint ¶ 23).  Both Lakeshore and Boland entered into subcontract agreements with Target, as subcontractor, to provide certain additional work.  (Complaint, ¶¶ 22, 24).

---

[1]/ "The Supreme Court has explicitly disapproved of denying leave to amend without adequate justification." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)(citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  The Fifth Circuit has consistently expressed its "strong preference for explicit reasons" and has indicated the disfavor with which it views denials of amendments without stated reasons.  *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153-54 (5th Cir. 1981).

Target, as subcontractor, entered into an agreement and/or agreements with certain defendants herein as sub-subcontractors to perform work involving fabrication and installation of structural steel installations for the Lakefront Airport Project and the Cross Bayou Project. Those defendants are Kendra Construction Services, Inc. ("KCS") and Kendra & Associates, Inc. ("K&A"), (collectively "Kendra"); JRS Industries, Inc. ("JRS"); and Technical Works, Inc. ("TWI").

Target alleges that the bids for this work were artificially inflated by virtue of information improperly gained by Ingrid Arciniaga ("Ms. Arciniaga"), who at the time was the president of TWI. (Complaint, ¶ 35). Target alleges that Ms. Arciniaga was having a romantic relationship with the Target manager responsible for soliciting bids for the subcontract and that she obtained "sensitive and proprietary business information as to Target's operations, including the amounts budgeted by Target" for the aforementioned work subject of the subcontracts. (*Id.*) This alleged impropriety lies at the heart of Target's Original Complaint.

As noted, Ms. Arciniaga was at all relevant times the president of TWI, a California corporation that provided skilled and technical labor to various businesses and projects, including the two subject Corps Projects. Robert Arciniaga ("Mr. Arciniaga") is a director of TWI. Target alleges herein that the Arciniagas were the alter egos of TWI and thus personally liable for the damages alleged in this lawsuit. (Complaint, ¶¶ 13-15).[2]

---

[2] Target also alleges that Defendants, Kenneth Dwain Johnson and Brenda B. Johnson, were and are the "alter egos" of the Kendra Defendants and JRS. (Complaint ¶¶ 5-12).

Target contends that as part of the contracting process for the Lakefront Airport Project and the Cross Bayou Project, Target submitted bids for its scope of work to Boland and Lakeshore, respectively, as the prime contractors on their respective projects. Included in each bid was a budget for specific categories of the work to be performed by Target, which budget was approved by Boland and Lakeshore, respectively. (Complaint, ¶ 28). In bidding for the two subcontracts, Kendra submitted bids representing Kendra's actual appraised value of the cost of performing each subcontract, together with standard markup for overhead and profit. (Complaint, ¶ 29). Target awarded the subcontracts to Kendra for the two projects. (Complaint, ¶ 30).

As noted, Target alleges that Ms. Arciniaga was able to obtain certain of Target's "sensitive and proprietary business information" relevant to the subcontracts. (Complaint, ¶ 31). Specifically, it alleges that after the Kendra subcontract bids were accepted by Target, Ms. Arciniaga learned "that the amount budgeted by Target for the scope of work assigned to [Kendra] for each Project was higher than the amount of Kendra's bid on each Project." (Complaint, ¶ 32). Target alleges that, in concert with the Arciniagas/TWI, Kendra thereafter artificially inflated the amount of its bids, on the Lakefront subcontract and the Cross Bayou subcontract, respectively, for the specific purpose of inducing Target to issue purchase orders to Kendra/TWI at an increased cost to Target which cost increase was not reflect of any corresponding cost increase to Kendra/TWI.

Target claims that it did thereafter issue artificially inflated purchase orders to Kendra in reliance upon the material misrepresentations of the Defendants, to Target's actual detriment. (Complaint, ¶ 34). Furthermore, Target maintains that TWI assisted in

4

the management of Kendra's finances relative to Kendra's participation on the Projects, including TWI's participation in numerous meetings and conferences among the Defendants and Target at which time the Defendants "assured Target that Kendra would complete its agreed-upon scope of work within the agreed budgetary constraints." (Complaint, ¶ 35).

Target further alleges that Kendra repeatedly submitted budgets on the Lakefront Airport Project which purported to increase the amounts necessary to complete Kendra's scope of work. Eventually it was revealed that each budget included substantial overbilling by the Defendants. (Complaint, ¶ 36). Target also alleges that instead of applying payments made by Target toward Kendra's scope of work on the Lakefront Airport Project, the Defendants were diverting funds to pay outstanding debts owed by the Defendants to third parties. (Complaint, ¶ 37).

Due to the allegedly defective work by Kendra, Target claims it was forced to expend additional funds and labor costs in replacing a platform that Kendra fabricated improperly. Target's costs in this regard included the costs of shipping the non-functional platform to the job site from California. (Complaint, ¶ 38). The Defendants also allegedly failed to pay Target the purchase price of a lift mechanism it purchased at the direction of Kendra for use on the Lakefront Airport Project.

Target makes similar allegations of misdeeds concerning the submission of budgets on the Cross Bayou Project which purported to increase the amounts necessary to complete Kendra's scope of work. (Complaint, ¶ 40). As a result, Target's contract with Lakeshore was terminated on March 14, 2011, terminating Kendra's participation on that

project. Nonetheless, Target contends that the Defendants "were able to extract an additional payment from Lakeshore of funds actually owed to Target, which payment amount was far in excess of the amount owed to Kendra for its work on the Cross Bayou Project." (Complaint, ¶¶ 41-42).

Based on the foregoing, the instant lawsuit was filed on March 29, 2012, asserting numerous causes of action against all Defendants for, among other things, fraud; violation of the Louisiana Unfair Trade Practices law, La. Rev. Stat. 51:1401; and – perhaps most notably for present purposes – indemnity. As discussed above, the Complaint sets forth various "veil-piercing," "alter-ego" and "single-business enterprise" theories against the Defendants.[3]

On August 17, 2012, the Trial Court issued a Scheduling Order setting the deadline for amendments to pleadings on September 17, 2012. (Rec. doc. 102). The discovery deadline was June 17, 2013. On April 17, 2013, the Trial Court issued another Scheduling Order, setting the deadline for amendments to pleadings for May 17, 2013. (Rec. doc. 353). The deadline for discovery was April 15, 2014 and trial was set to begin June 2, 2014.

On April 1, 2014, two weeks before the discovery deadline (and almost a year after the deadline for amendments to pleadings), Target filed an Ex parte/Consent Motion to Continue Trial, which included a express objection by Defendants to the continuance of any pretrial deadlines. That Motion was premised on the allegation that the "practical realities"

---

[3] Suffice to say the Defendants all vigorously deny the allegations against them. For purposes of deciding this motion, however, the Court focuses on the allegations in Plaintiff's Original Complaint, as amplified by various discovery responses, which are discussed more fully below.

6

of transferring file materials from Plaintiff's counsel's former law firm to their present firm. (Rec. doc. 613).

On April 7, 2014, the Trial Court convened a telephone Status Conference to discuss Plaintiff's Motion and on April 9, 2014, that Court issued a Scheduling Order continuing the trial date and re-setting the deadline for amendments to pleadings to May 9, 2014. (Rec. doc. 622). The discovery deadline is now August 18, 2014 and trial is set for October 6, 2014. (*Id.*).

Target filed the present Motion for Leave to Amend on May 9, 2014 – the very last day that it could do so under the Trial Court's third Scheduling Order.

## II. THE RELEVANT ALLEGATIONS SET FORTH IN THE PROPOSED AMENDED COMPLAINT

In its Motion for Leave to Amend Complaint, Plaintiff focuses almost entirely on a single substantive amendment to the Original Complaint, *i.e.*, the addition of a new Defendant, TWI, LLC, which Target alleges is necessary to "supplement [its] existing allegations of a single-business-entity/corporate veil-piercing liability" concerning the Arciniagas. In their Opposition Memoranda, Defendants argue against that amendment and additionally observe and object to the presence of what they claim is an even more troublesome and improper addition – a heretofore unarticulated claim for indemnity arising from an October 15, 2013 Michigan arbitration award against Target in the amount of $3,141,687.30. Each of these two proposed amendments will be addressed separately below.

### A. Standard of Review

Federal Rule of Civil Procedure 15(a), governs the amendment of pleadings and provides that leave to amend pleadings "shall be freely given when justice so requires." **Fed.R.Civ.P. 15(a)(2)**. Rule 15 and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

While leave to amend shall be freely given when justice so requires, it is by no means automatic and the ultimate decision whether to grant leave to amend a complaint is committed to the sound discretion of the court. *Mayeaux v. Louisiana Health Service and Indem. Co.*, 376 F.3d 420 (5th Cir. 2004); *see also Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir.), *cert denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981). Because of the liberal pleading presumption underlying Rule 15(a), the Fifth Circuit has acknowledged that the term "discretion" in this context "may be misleading, because Fed.R.Civ.P. 15(a) evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC*, 234, F.3d 863, 872 (5th Cir. 2000)(internal quotations and citations omitted). As a result, absent a "substantial reason" such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party,[4] "the discretion of the district court is not broad enough to permit denial." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co.*, 195 F.3d 765, 770 (5th Cir. 1999).

---

[4] This oft-cited list of justifications was pronounced by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The propriety of Target's proposed amendment must be weighed against the aforementioned factors.

### B. The addition of TWI, LLC as a Defendant

Target seeks to add by amendment an additional party, TWI, LLC, alleging that the newly named TWI entity is a successor company to the original TWI Defendant and that the addition of this new entity is necessary to supplement its previously pleaded single-business-entity/corporate veil-piercing allegations.  It justifies the late naming of this new party by pointing out that it only learned of the Arciniagas' connections to this "successor company" during depositions in March 2014.

The Defendants counter by arguing that, because TWI, LLC "has been in existence since 2010," Target is guilty of "undue delay" for failing to name that entity more expeditiously.  The Defendants rely on two cases, *De Franceshi v. BAC Home Loans Servicing, L.P.*[5] and *Lackey v. SDT Waste & Debris Services*[6] to support this argument.  Neither case does so.

Both of the cases cited by Defendants turned on the notion that the Plaintiff knew or should have known of the facts relevant to their amendments, such that their delay in filing those amendments could be deemed "undue."  That is not the case here.  As pointed out by Target (and admitted by Defendants' counsel in open court at oral argument), when asked directly and expressly in written discovery propounded in February 2013 to disclose the identity of every limited liability company in which they were "principal, officer, <u>member</u>

---

[5] 477 Fed.Appx. 200, 204 (5th Cir. 2012).
[6] No. 11-CV-2087, 2014 WL 1246062.

9

or director," the Arciniagas failed to disclose the existence of or their membership in TWI, LLC. (Rec. doc. 647-2, at 5). Confronted with this omission at oral argument, counsel conceded that the Arciniagas' failure to disclose their membership in TWI, LLC was an "oversight."

Oversight or not, the Arciniagas did not disclose their membership in TWI, LLC (or even its existence) when they had the opportunity to do so in March 2013. There is no evidence in the record to suggest that Target otherwise was aware of their relationship to that entity until these Defendants testified a year later. Accordingly, this Court cannot conclude that Target's otherwise timely amendment adding TWI, LLC was the product of "undue delay" such that leave to add that party should be denied.

And, although invited to do so by Defendants, the Court can find no other "substantial reason," such as bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party that would justify denial of Target's Motion for Leave to add TWI, LLC as a party. The same cannot be said for the additional claim Target seeks to add.

### C. The Addition of an Indemnity Claim Related to the Michigan Arbitration

Although it failed to point out or justify the addition of this claim in its Motion for Leave to Amend, Target seeks to add through the proposed amendment a very specific claim for indemnity arising out of a large award against it in the Michigan Arbitration. In opposition, Defendants argue that Plaintiff has not offered a satisfactory explanation for the

delay in adding that claim and further argue they would be unduly prejudiced by the late addition of this claim. The Court agrees.

At the outset, the Court notes that the Motion for Leave to Amend adding the subject claim was technically filed timely – on the very last day of the filing period provided for by the Trial Court (rec. doc. 622). This does not, however, pretermit an inquiry into whether the amendment was unduly delayed and/or whether it unduly prejudices the Defendants.

In its Original Complaint, under the heading "INDEMNITY," Target alleged the following:

### COUNT IV: INDEMNITY

69.
Target adopts, realleges, and incorporates the preceding allegations of paragraphs 1 through 68 as if copied herein *in extenso*.

70.
As a result of the above-described conduct of the Johnsons/Kendra/the Arciniagas/TWI and B&B, Target and/or principals and officers of Target have been named as defendants in the suits captioned Lakeshore Engineering Services, Inc. v. Jeff Fegert, et al., Case Number 2:12-CV-11071, United States District Court, Eastern District of Michigan, and Commercial Trade, Inc. v. Target Construction, Inc., et al., Civil Action Number S-1500-CV-275532, Superior Court of California, County of Kern, Metropolitan Division Limited Civil, State of California.[7]

This allegation cited two specific and distinct lawsuits, neither of which ripened into the Michigan Arbitration proceeding. Alleged liability arising from that proceeding was not pleaded until the May 9, 2014 deadline for amending pleadings. In Target's proposed Amended Complaint, the foregoing allegations are replaced with the following:

67.

---

[7] (Rec. doc. 1).

11

>Target adopts, realleges, and incorporates the preceding allegations of paragraphs 1 through 66 as if copied herein in extenso.
>
>68.
>
>As a result of the above-described conduct of the Johnsons/Kendra/the Arciniagas/TWI, Target and/or principals and officers of Target have been named as defendants in the following lawsuits:
>
>>a. The suit captioned <u>Lakeshore Engineering Services, Inc. v. Jeff Fegert, et al</u>., Case Number 2:12-CV-11071, United States District Court, Eastern District of Michigan ("the Lakeshore I matter"); and
>>b. The suit captioned <u>Lakeshore Engineering Services, Inc. v. Target Construction, Inc.</u>, Case Number 2:13-CV-14498, United States District Court, Eastern District of Michigan ("the Lakeshore II matter").[8]

The second of the two suits listed in the proposed amendment is entirely different from either suit listed in the Original Complaint. The Court's research indicates this second suit is actually a suit filed on October 25, 2013, by Target's creditor in the Michigan Arbitration to confirm the October 13, 2014 award against Target.[9] Target therefore knew about both the Michigan lawsuit and the underlying arbitration award for at least six months prior to filing its indemnity claim for that award on the last day to do so in <u>this</u> matter.

While these facts alone could lead the Court to conclude the amendment is the product of undue delay, one additional fact makes this conclusion even clearer. On March 27, 2014, over five months after the aforementioned lawsuit to confirm the Michigan Arbitration award was filed, Target responded to the following written discovery request:

---

[8] (Rec. doc. 638-3).
[9] *See* Case No. 13-CV-14498, Eastern District of Michigan, (rec. doc. 1).

12

> **Interrogatory No. 18**: For each item of damages you claim in this action, please state the amount of damages you are seeking, and the basis upon which you compute this amount.[10]

Target's response included a listing of "categories of damages for which Defendants may be responsible." There were six such categories, each with a specific and detailed corresponding dollar amount. Nowhere in that response is the Michigan arbitration award or the lawsuit to confirm it mentioned.

The totality of the record evidence leads this Court to conclude that Target unduly delayed pleading this additional claim and that its delay comprises a "substantial reason" to deny its Motion for Leave to add that claim. *Martin's Herend Imports, Inc.*, 195 F.3d at 770.

The Court also notes Defendants' pleas that the subject amendment would unduly prejudice them in preparing for trial and completing discovery in this matter. The Fifth Circuit has stated that a defendant is prejudiced in this vein if an added claim would require the defendant "to reopen discovery and prepare a defense for a claim different from the [one] ... that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004)(quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)). There is no question that such is the case here.

As noted, Target failed throughout this litigation to even identify the action that forms the basis for its new claim. The defendants correctly point out that, if this claim were allowed, they would be forced to reopen discovery and to prepare a defense to this claim, which is not only new, but multiplies the damages previously articulated in Target's March

---

[10] (Rec. doc. 662), at 3.

13

2014 discovery responses by some 250 percent. Under the circumstances, the Court is convinced Defendants would be unduly prejudiced by the addition of this claim.

In sum, Target has been aware of the award against it in the Michigan Arbitration since at least October 15, 2013, almost seven months before the proposed amendment was proffered. (Rec. doc. 662-1). While it argues that certain allegations in the Original Complaint "touched upon" Target's new claim for indemnity arising out of the Michigan Arbitration award, a comparison of the two complaints belies this proposition.[11] This conclusion is bolstered by a review of Target's responses to written discovery, which failed to identify this possible source of liability, even though those responses were provided some five months after the arbitrator's award. For these reasons, the Court specifically finds that Target unduly delayed its amendment adding the subject claim and that this late amendment, if allowed, would unduly prejudice the Defendants. These are "substantial reasons" to deny the request to add this claim, which the Court does herein.[12]

For the foregoing Target's Motion is GRANTED IN PART and DENIED IN PART. Specifically, Target is granted leave to file an amended complaint that names the additional party they seek to add ("TWI, LLC"). However, Target is denied leave to add any claims against Defendants in this litigation that seek recovery or indemnity related to or arising

---

[11] In its May 28, 2014 Minute Entry related to the present motion, this Court ordered Target to identify with specificity the allegations in the Original Complain that it contends set forth the conduct underlying the new claim. Target has provided nothing that convinces the Court that it put the Defendants on notice of the potential liability that may arise out of the Michigan Arbitration.

[12] Defendants have also argued futility of the amendment. Because the Court denies Plaintiff's request to add the claim on other grounds, and because a futility analysis would require at least some consideration of the merits of the underlying claim, the Court declines to conduct such an inquiry.

out of the award against it in the American Arbitration Association Case Number 54-110-Y-00690 11 or the Michigan District Court lawsuit confirming that award.

New Orleans, Louisiana, this  16th  day of     June    , 2014.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE