UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **UNITED STATES OF AMERICA, for the use and benefit of  BARCELONA EQUIPMENT, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2183**<br>**C/W 11-2295**<br>**C/W 12-0708**<br>**C/W12-0838** |
| **DAVID BOLAND, INC., INC., ET AL.** | **SECTION "K"(4)** |

**Re: Target Construction, Inc. v. Kendra &
      Associates, et al., C. A. No. 12-838**

## ORDER AND REASONS

Before the Court is a "Motion for Summary Judgment Pursuant to Fed. R. Civ. P. Rule 56" filed by Technical Works, Inc. ("TWI"), Ingrid Arciniaga and Robert Arciniaga (collectively "the Arciniagas").[1]  Defendants contend that the claims  for breach of contract, fraud and unfair trade practices brought plaintiff Target Construction, Inc. ("Target") should be dismissed.  For the reasons that follow, the Court finds that because there is no contract between TWI, Ingrid Arciniaga and Robert Arciniaga and Target, the motion must be granted as to the breach of contract claim.  Moreover, the unfair trade practices claim is subject to a one year peremptive period and is prescribed requiring its dismissal. However, there are material questions of fact as to the fraud claim, which has not prescribed, which preclude summary judgment in that regard.

---

[1]There are five other defendants named in this matter.  Defaults have been entered against Kenneth Johnson, Brenda B. Johnson, Kendra & Associates, Inc., and Kendra Construction Services, Inc.  Service has apparently not been made on JRS Industries, Inc.

**BACKGROUND**

Target Construction, Inc. ("Target") is a Nevada corporation authorized to do business in Louisiana. (Doc. 684, First Supplement, Amended and Restated Complaint, ¶ 1) (hereafter "Amended Complaint").  As this Court has explained in previous opinions, the United States Army Corps of Engineers ("the Corps") contracted with David Boland, Inc. ("Boland") as prime contractor to perform the complete construction of a Corps project (USACE Project Number W912P8-10-C-0079) near the Lakefront Airport in New Orleans, Louisiana ("the Lakefront Airport Project") on May 26, 2010.  (Rec. Doc. 111, Order and Reasons Denying Motion to Dismiss).  The Corps also contracted with Lakeshore Engineering Service, Inc. ("Lakeshore") as prime contractor, to perform the complete construction of another Corps project (USACE Project Number W912P8-10-C-0050) near the Cross Bayou drainage structure in Destrehan, Louisiana ("the Cross Bayou Project").  Both Lakeshore and Boland entered into subcontract agreements with Target, as subcontractor, to provide certain work. (Amended Complaint, ¶¶ 25-28).

Target sought to sub-subcontract out the fabrication and installation of certain structural steel installations.  That sub-subcontracting responsibility fell to Target's then Gulf Coast Regional Manager, Edward Riggs.   Eventually, those sub-subcontracts were awarded to the Kendra[2] defendants herein.  Target contends that the Kendra bids were artificially inflated by virtue of information gained by Ingrid Arciniaga (Ms. Arciniaga), with whom Mr. Riggs had a romantic relationship and who had a monetary interest in Kendra's accounts receivables.

---

[2] [2]These companies are Kendra Construction Services, Inc. ("KCS"), Kendra & Associates, Inc. ("K&A") and JRS Industries, Inc. ("JRS") (collectively "Kendra").  (Amended Complaint ¶13).

Ms. Arciniaga is the President of TWI.  Mr. Arciniaga is a director of TWI. Target contends that Ingrid and Robert Arciniaga were and are the alter ego of TWI and are thus personally liable for the damages alleged herein. (Amended Complaint, ¶¶13-15).

Prior to Target's search for a structural steel sub-subcontractor, TWI had developed a controlling financial and managerial interest in Kendra.    TWI began providing labor and payroll services under a written contract with K&A in November of 2009.  On July 23, 2010, Kendra, as K & A, entered into a "Reaffirmation, Pledge and Security Agreement" ("RPSA"), and Kendra, as Kendra Construction, Inc., entered into an identical RPSA with TWI on August 12, 2010. (Amended Complaint, ¶¶ 22 and 23).   Through these two instruments, the outstanding debt was reaffirmed and TWI was granted a UCC security interest in all of Kendra's receivables, contracts, general intangibles and proceeds.  (Amended Complaint, ¶ 23).  As a result of this linkage, Target maintains that Kendra and TWI functioned as a single business entity for all of the conduct alleged in its complaint.  (Amended Complaint, ¶ 24).

Target entered into an agreement and/or agreements with Kendra as sub-subcontractor to perform work involving the fabrication and installation of structural steel installations for the Lakefront Airport Project ("the Lakefront sub-subcontract") and the Cross Bayou Project ("the Cross Bayou sub-subcontract").   (Amended Complaint ¶29).  As a specific condition of Target's hiring Kendra for work on the two projects, Target requested that TWI agree to supply labor for Kendra's scope of work and to manage Kendra's finances relative to Kendra's participation on the Projects.  Both Kendra and TWI allegedly agreed to this arrangement and TWI did supply labor for these two projects.  (Amended Complaint, ¶¶ 30-31).

Target contends that as part of the contracting process for the Lakefront Airport Project and the Cross Bayou Project, Target submitted bids for its scope of work to Boland and Lakeshore, respectively as prime contractor on each project. Included in each bid was a budget for specific categories of the work to be performed by Target, which budget was approved by Boland and Lakeshore, respectively. (Amended Complaint, ¶ 32). In bidding for the two sub-subcontracts, Kendra submitted bids representing Kendra's actual appraised value of the costs of performing each sub-subcontract, together with standard markups for overhead and profit. (Amended Complaint, ¶ 33). Target awarded the sub-subcontracts to Kendra for the two projects. (Amended Complaint, ¶ 34).

Target maintains that because of the relationship that Ms. Arciniaga had with Edward Riggs, "the Arciniagas were able to obtain sensitive and proprietary business information as to Target's operation, including the amounts budgeted by Target for the scope of work of the projects assigned to Kendra which were the subject of the sub-subcontracts." (Amended Complaint, ¶35). In particular, after the Kendra sub-subcontract bids were accepted by Target, the defendants learned through Mr. Riggs "that the amount budgeted by Target for the scope of work assigned to [Kendra] for each Project was higher than the amount of" Kendra's bid on each Project." (Amended Complaint, ¶36). As such, in concert with the Arciniagas/TWI, Kendra thereafter artificially inflated the amount of its bids on the Lakefront sub-subcontract and the Cross Bayou sub-subcontract, respectively, for the specific purpose of inducing Target to issue purchase orders to Kendra/TWI at an increased cost to Target which cost increase was not reflective of any corresponding cost increase to Kendra/TWI." (Amended Complaint, ¶37). As

4

proof of these contentions, Target provided the Court with a series of e-mails and revised bid proposals that indicate that:

(1) Ms. Arciniaga believed that it was because of her involvement with Riggs that Kendra was given the opportunity to work with Target (Doc. 609-6, Exhibit "F" to Memorandum in Opposition).  Indeed, this e-mail could indicate that Ed Riggs and she were working in tandem for the benefit of TWI.

(2) On June 13, 2010, Kendra created a proposal of **$112,668.66** for Target for performing the structural steel work for the Lakefront Airport Project.  (Doc. 609-4, Exhibit "D-1", p. 6-8 of 110).

(3) On June 14, 2010, Riggs received this proposal. (Doc. 609-4, Exhibit "D-2", p. 9 of 110).

(4) On that same day, Riggs sent an e-mail to Ms. Arciniaga, detailing the fact that Target's proposal was about **$35,000 to $45,000** below what the budget for that work was.  He wrote, "this means we can issue purchase order for some amount higher than [Kendra's] quote (up to the difference) and you may be able to work something out with them to factor and get your money right away."  (Doc. 609-4, "Exhibit D-3",  p. 13 of 110).

(5) A series of draft purchase orders were prepared and shared with Ms. Arciniaga which may indicate a manipulation of pricing for the benefit of TWI on the Lakefront Airport Project.  (See Doc. 609-4, Exhibit "D-4" at 18-28 of110,

Exhibit "D-5" at 29-40, Exhibit "D-6" 41-51[3]).  The finalized contract is identified as Exhibit "D-7" and was for **$187,688.60.**

(6) A proposal for the Cross Bayou Project was initiated by Kendra, sent to Briggs who then forwarded these proposals to Ms. Arciniaga.  (See Doc. 609-4, Exhibit "D-8").  That proposal was in the amount of **$352,408.00**  The final executed contract between Kendra and Target was for **$443,416.00**–a difference of $91,008.00 more than the original proposal penned by Kendra.  (See Doc. 609-4 Exhibit "D-9".   Each of these concerned two different "Scope of Work Descriptions" Specifically each line item of costs increased as follows:

| Scope of Work Exh. A | | |
|---|---|---|
| Work Description | Scope of Work Exhibit D-8 | Scope of Work Exhibit D-9 |
| Platform Per S-401 | $61,301.00 | $77,240.00 |
| Bulkhead Slot Per S-507 | $28,749.00 | $35,594.00 |
| Bulkhead Gates Per S-508 | $71,566.00 | $90,173.00 |
| Trashracks Per S-511 | $87,678.00 | $110,475.00 |
| Trashracks Per S513 | $96,614.00 | $121,734.00 |
| Sub Total : Per Each Drainage Structure S-105 | $345,908.00 | $435,216.00 |
| Alternate: Qualification 1 | $6,500 | $8,200.00 |
| TOTAL | $352,408.00 | $443,416.00 |

These figures indicate that between the Kendra-drafted proposal and the Target Construction Purchase Order Agreement and  Scope of Work for Cross Bayou Project

---

[3] Exhibit "D-5" was transmitted by e-mail to Ms. Arciniaga; Exhibit "D-6" was transmitted with as e-mail that reads: "Hi sweetie:  I have attached the contract for your review.  I would like to talk to you about this at your earliest convenience.  There's a couple of issues I want to go over with you regarding their payments.  Edward." *Id.*

that was actually executed there was approximately a 25 percent increase in the costs charged by Kendra to Target.

| Scope of Work Exh. B | | |
|---|---|---|
| Work Description | Scope of Work Exhibit D-8 | Scope of Work Exhibit D-9 |
| 6 Sluice Gates and 1 Portable electric actuator | $333,035.00 | $419,625.00 |
| Alternate 1 | $4000.00 | $4000.00 |
| Total | $337,035.00 | $423,625.00 |

Again, there was an increase of $86,590 or a 25% increase between the Kendra-drafted proposal and the Target Construction Purchase Order Agreement and Scope of Work for Cross Bayou Project.

So these documents provide support for the proposition that the ultimate amount paid by Target for work provided by Kendra was inflated by 25% for a total of $177,606.00. Moreover, it is circumstantial proof that these increases were made to benefit TWI.

Thus, Target contends that it thereafter did in fact issue artificially inflated purchase orders to Kendra in reliance upon the material misrepresentations of the defendants, to Target's actual detriment. (Amended Complaint, ¶38). Furthermore, Target maintains that TWI assisted in the management of Kendra's finances relative to Kendra's participation on the Projects including TWI's participation in numerous meetings and conferences among the defendants and Target at which time the defendants "assured Target that Kendra would complete its agreed-upon scope of work within the agreed budgetary constraints." (Amended Complaint, ¶ 39).

Target alleges that Kendra repeatedly submitted budgets on the Lakefront Airport Project which purported to increase the amounts necessary to complete Kendra's scope of work. Eventually it was revealed that each budget included substantial over billing by the defendants.

(Amended Complaint, ¶40). Target also contends that instead of applying payments made by Target toward Kendra's scope of work on the Lakefront Airport Project, the defendants were diverting funds to pay outstanding debts owed by the defendants to third parties. (Amended Complaint, ¶41).

Due to the allegedly defective work by Kendra, Target was forced to expend additional funds and labor costs in replacing a platform which Kendra fabricated improperly. Target's costs in this regard included the costs of shipping a non-functional platform to the job site from California. (Amended Complaint, ¶42). The defendants also failed to pay Target the purchase price of a lift mechanism it purchased at the direction of Kendra for use on the Lakefront Airport Project.

Target's contract with Lakeshore was terminated aound March 15, 2011, terminating Kendra's participation on that project. Nonetheless, Target contends that the defendants "were able to extract an additional payment from Lakeshore of funds actually owed to Target, which payment amount was far in excess of the amount owed to Kendra for its work on the Cross Bayou Project." (Amended Complaint, ¶¶ 46).

Jeffery Fegert, who is the President of Target avers that while he was aware of cost overruns, it was not until shortly before September 16, 2011, did he discover Rigg's involvement in the manipulation of the purchase orders for the Cross Bayou Project and the Lakefront Airport Project. (Doc. 609-4, 28 U.S.C. § 1746 Declaration of Jeffery E. Fegert", Exhibit "D" , ¶ 21, at 4 of 110. As evidence of this assertion, Fegert has provided an e-mail in which he states to Riggs, "There is no doubt Kendra involves issues you and I need to discuss to clear the air, however, they are not terminal to our relationship." (Doc. 609-4, Exhibit "D-12" at 107 of 110).

Based on the foregoing, the instant lawsuit was filed on March 29, 2012, with an Amended Complaint filed on July 22, 2014.  Target seeks damages for breach of contract, fraud and violation of the Louisiana Unfair Trade Practices Act, La. Rev. Stat. 51:1401 against, *inter alia,* TWI, Ingrid Arciniaga and Robert Arciniaga ("the TWI defendants").  TWI and the Arciniagas have filed the instant motion contending that they are entitled to judgment in their favor as the claims lack merit and are prescribed as well.  The leitmotif of their argument is there did not exist any legal duty for TWI to refrain from advantageously using propietry information that was willingly shared by Edward Riggs.  The Court will now turn to these legal contentions.

**STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Industrial Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010). The Court will now turn to the individual claims and the issue of prescription as applicable.

### A. Breach of Contract

As this Court previously stated in *Lamar Contractors, Inc. v. Rolling Plains Const., Inc.,* 2012 WL 2190814 (E.D.La. June 14, 2012), "To prevail on a claim for breach of contract plaintiff must prove, among other things, the existence of a contract. *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir. 2002)." Movers contend there is no contract between them and Target and as such this claim fails. Target has not produced any

argument or proof to the contrary.  Accordingly, the Court finds that the motion in this regard must be granted.  As such, the issue of prescription is irrelevant.

### B. Fraud

"Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."  La. Civ. Code art. 1953.   The two essential elements of fraud are the intent to defraud or gain an unfair advantage and actual or probable damage.  *Global Oil Tolls, Inc. v. Barnhill*, 2013 WL 5348548, *12 (E.D.La. September 23, 2013) (Barbier, J.) citing *Dutton & Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La. App. 4th Cir. 1992).  Clearly, the evidence presented and outlined above as to the inflation of costs for scope of work on the Lakefront Airport Project and the Cross Bayou Project at issue present questions of fact for a jury to determine whether TWI and the Arciniagas committed fraud.

As to the issue of whether this claims has prescribed, fraud is a tort which is governed by the liberative prescription of one year provided by La. Civ. Code art. 3492.  *State ex rel. Louisiana Dept. of Education-Food Service v. Bright Beginnings Child Care, Inc.,* 957 so.2d 362, 366 (La. App. 2nd Cir. 2007).  Prescription begins to run when the plaintiff has actual or constructive knowledge of the alleged tortuous act.  *Bell v. Demax Management, Inc.,* 824 So.2d 490, 493 (La. App. 4th Cir. 2002).   Thus, based on the affidavit of Mr. Fegert's, it would appear that the doctrine of *contra non valentum* prevents the dismissal of the fraud allegations.  As such, there is no merit in defendants' motion.

### C. Louisiana Unfair Trade Practices Act

The Louisiana Unfair Trade Practices Act ("LUTPA") provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A). Moreover LUTPA allows "[a]ny person who suffers any ascertainable loss of money or movable property as a result of any unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405," to bring an action individually to recover actual damages. La. Rev. State § 51: 1409. *Silva v. Enercept, Inc.*, 2011 WL 1059110 (E.D.La. March 23, 2011) (Barbier, J.).

The court in *Southern Serv. Corp. v. Tidy Building Serv., Inc.*, 2004 WL 2784909 (E.D.La. Dec. 1, 2004) described the scope of these provisions as follows:

> The broad language of the statue "necessarily requires a case-by-case determination of what constitutes unfair competition or an unfair trade practice." *Capitol House Preservation Co. L.L.C. v. Perryman Consultants,Inc.*, 725 So.2d 523, 529 (La. App. 1st Cir. 1998) (citations omitted); *Strahan v. State of Louisiana, Dept. of Agriculture and Forestry*, 645 So.2d 1162, 1165 (La.App. 1st Cir. 1995). "A trade practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Marsh v. Citicorp*, 601 So.2d 669, 670 (La. App. 5th Cir. 1992); *see also Turner v. Purina Mills, Inc.*, 989 F.2d 1419 (5th Cir. 1993); *Camp, Dresser& McKee, Inc. v. Steimle and Associates, Inc.*, 652 So.2d 44, 48 (La. App. 5th Cir. 1995); *Capitol House*, 725 So.2d at 529. "Conduct is considered unlawful or (sic) when it involves 'fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct.'" *Wyatt v. PO2 Inc.,* 651 So.2d 359, 361 (La. App. 2d Cir. 19950(quoting *Core v. Martin*, 543 So.2d 619 (La. App. 2d Cir. 1989)). Louisiana has left the determination of what constitutes an unfair trade practice to the courts. *Turner,* 989 F.2d at 1422*; Capitol House,* 725 So.2d at 529.

*Id.* at *8. Nonetheless, LUTPA

> does not prohibit sound business practices, the exercise of permissible business judgment or appropriate free enterprise transaction. To be unfair the conduct must offend established public policy. Fraud, deceit and misrepresentation constitute deceptive practices. *Monroe Medical Clinic, Inc. v. Hospital*

12

>   *Corporation of America,* 522 So.2d 1362 (La. App. 2d Cir. 1988); . . . . A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition.

*SDT Industries, Inc. v. Leeper*, 793 So.2d 327, 333 (La. App. 2nd Cir. 2001).

Again, in light of the materials presented, the Court finds that there would be material questions of fact as to the issue of the manipulation of purchase orders related to the Lakefront Airport Project and the Cross Bayou Project which preclude summary judgment in this instance. However, this claim is time barred.

LUTPA provides, " the action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." This provision has been found to be peremptive and thus is not subject to the doctrine of *contra non valentum*. *Abene v. Jaybar, LLC,* 802 F.Supp.2d 716, 722 (E.D.La. 20110)(Fallon, J.). As stated in *Abene*:

>   If the time limitation is prescriptive, then the doctrine of *contra non valentum* may apply to suspend prescription if "the cause of action is neither known nor reasonably knowable by the plaintiff." *Renfroe v. State ex rel Dep't of Transp. & Dev.*, 809 So2d 947, 953 (La. 2002). A time limitation that is peremptive in nature, however, is not subject to suspension, interruption, or renunciation. *State v. McInnis Bros. Constr.*, 701 So.2d 937, 939 (La. 1997) (citing La. Civ. Code are. 3461). As a consequence, the doctrine of *contra non valentum* is inapplicable in the context of peremption. *Id.* at 940.

In this instance, the purchase orders are the trigger for this claim. The Lakefront Airport Project Purchase Order Agreement (Rec. No. 609-4, Exh. "D-7" at 59 of 110) was finally executed on July 30, 2010 with an Amendment signed on August 2, 2010. The Cross Bayou Purchase Order was executed on August 20, 2010. (Rec. Doc. 609-4, Exh. "D-10" at 92 of 110). The instant suit was filed on March 29, 2012, which is beyond the one year peremptive period. As such, the LUTPA claim must likewise be dismissed. Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment Pursuant to Fed. R. Civ. P. Rule 56" (Doc. 548) filed by Technical Works, Inc. ("TWI"), Ingrid Arciniaga and Robert Arciniaga (collectively "the Arciniagas") is **GRANTED** with respect to the breach of contract claim and the LUTPA claims and **DENIED** with respect to the fraud claim.

New Orleans, Louisiana, the 11th day of August, 2014.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**